These cases came up on error from the common pleas court, where they had been tried together upon an agreed statement of facts, in substance as follows: September 9, 1880, Samuel A. Hall, of Coalburg, the owner of a stock of goods, procured insurance in the above companies. April 18, 1881, while the policies were in force, Hall sold and assigned a one-half interest in the stock of goods covered by the policies to J. M. Kuntz. Kuntz continued to hold the one-half interest thus acquired until June 1,1881, when he sold his interest to Miller for Hall, and on the same day Miller transferred that interest to Hall, and Hall again became the owner of the entire stock. July 19,1881, a fire occurred, the goods were destroyed and the loss sustained. Since the loss, the interest of Hall in the policies has been assigned to Rowland K. Lewis, who sues to recover for the loss.
It is claimed by the companies, that the provisions of the policies stipulated for a forfeiture in case of a transfer of the property, or a portion thereof. By the agreed statement of facts it appears that there had been an assignment of the goods 'during the life of the policies, and it is urged that the policies became void. There is no material difference in the conditions of the two policies. That of the North American provides that if the goods are assigned, sold or encumbered, the insurance shall terminate. The Phoenix policy provides that the goods may be disposed of and the policy assigned, provided the consent of the company by endorsement in writing is obtained; otherwise the insurance shall cease from date of change in ownership. There was no consent given by either company, nor was there an assignment of policies.
There is no doubt that when Hall sold to Kuntz there was an entire change of ownership. Neither was owner of any *80 distinct part, but they were joint owners, and during the time of joint ownership neither company would have been liable in case of loss. The question is, when Hall transfers a part of his interest, and the policies are suspended, what is the effect upon the policies when the insured again becomes the owner-and acquires the same interest he held at first ?
No case cited directly and squarely makes the question here presented. One in the 12th Maine is similar. The assured sold all his goods and leased the store, and then took them back. It was held that it was not alienation within the meaning of the policy, and the assured was allowed to recover. In Wood on Insurance, the doctrine is laid down that a sale of part of the goods insured only invalidates the policy as to the the part sold, and a re-conveyance re-instates the assuréd as to all rights under the policy, although the policy was suspended during the alienation.
The Maine case and those cited in Wood, seem to sustain the claim of Lewis. The stock would be constantly changing. New purchases would be made to keep up the stock. Such changes are contemplated by the parties to the policies, and the companies would be liable for the goods destroyed at the time of the loss. At the time of the loss, Hall had become the owner of all the goods, and the policies had again become binding between the parties. The parties to the contract recognized Hall’s right to sell to strangers, and to replenish his stock with new goods by purchases from others. Suppose he had sold his goods to five others, and then made purchases from a sixth person, and replaced the old goods with a new stock. There would be no question as to the validity of the policies in such a case.
A life-insurance case, cited in the 5th Rhode Island, is not analagous to the case at bar. It is the opinion of this court that the industrious counsel have presented all authorities which bear on this case, and after a careful examination of them, the action of the court below in giving judgment to Lewis is affirmed.